## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
PAUL W. GRIMM
CHIEF UNITED STATES MAGISTRATE JUDGE

101 W. LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-4560
(410) 962-3630 FAX

January 18, 2012

Lawrence P. Demuth, Esq.
Mignini & Raab, LLP
2015 Emmorton Road, Ste. 202
Bel Air, MD 21015

Alex S. Gordon, AUSA
36 South Charles Street
4th Floor
Baltimore,  MD  21201

    Re: *Catherine Gill v. Michael J. Astrue, Commissioner of*
    *Social Security*, PWG-09-1906

Dear Counsel:

    Pending before this Court, by the parties' consent, are
Cross-Motions for Summary Judgment concerning the Commissioner's
decision denying Ms. Gill's claim for Supplemental Security
Income ("SSI"). (ECF Nos. 8, 17, 28).  Plaintiff also filed a
response to Defendant's Motion. (ECF No. 31).  This Court must
uphold the Commissioner's decision if it is supported by
substantial evidence and if proper legal standards were
employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589
(4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir.
1987).  A hearing is unnecessary.  Local Rule 105.6.   For the
reasons that follow, this Court DENIES the Commissioner's Motion
and GRANTS the Plaintiff's Alternative Motion for Remand.

    Catherine Gill (sometimes referred to as "Ms. Gill" or
"Claimant") applied for SSI on January 11, 2007, alleging that
she was disabled as of June 1, 2005, due to coronary artery
disease, osteoarthritis, degenerative joint disease,
hypertension, back pain, carpal tunnel syndrome, diabetes
mellitus, blurred vision and bilateral adrenal adenomas. (Tr.
17, 117). Her claim was denied initially, and on

1

reconsideration. (Tr. 59-67).  After a hearing on June 17, 2008,
the ALJ denied Ms. Gill's claim in a decision dated November 4,
2008.  The ALJ concluded that Claimant had the following severe
impairments: nonobstructive coronary artery disease,
degenerative joint disease, bilateral adrenal adenomas,
hypertension, vision problems, and diabetes mellitus.  The ALJ
also found that these impairments did not meet, or medically
equal, any of the Listed impairments found in the Regulations.
The ALJ found that Ms. Gill retained the residual functional
capacity ("RFC") to perform a range of light work[1]. (Tr. 17).
Based on her RFC, the ALJ found that Claimant could not perform
any of her past relevant work ("PRW").  After receiving
testimony from a vocational expert ("VE"), the ALJ concluded
that work existed in the national and local economies in
significant numbers which Ms. Gill could perform.(Tr. 21).
Accordingly, the ALJ found she was not disabled.(Tr. 15-22).  On
May 21, 2009, the Appeals Council denied Ms. Gill's request for
review, making his case ready for judicial review. (Tr. 1-4).
Claimant presents several arguments in support of her contention
that the Commissioner's final decision should be reversed or in
the alternative remanded.

     First, Claimant argues that the ALJ failed properly to
analyze her impairments at step three of the sequential
evaluation. For the reasons that follow, I agree.  In finding
that Ms. Gill did not meet or equal a listing, the ALJ stated:

     "[T]he undersigned has reviewed the requirements of
     Listing 1.00, Musculoskeletal System, relative to
     claimant's degenerative joint disease.  The claimant
     has not undergone surgery or been referred to a pain
     management specialist for her musculoskeletal
     complaints. The record does not show evidence of a
     gross anatomical deformity, bony or fibrous ankylosis,
     joint space narrowing, or bony destruction. No medical
     source of record has appreciated muscle atrophy or
     opined that the claimant medically requires an
     assistive device to ambulate.  The undersigned finds
     that the symptoms of claimant muscloskeletal condition

---

[1] The ALJ found that she could lift and carry ten pounds
frequently, stand and walk for six hours, and should avoid
ladders, scaffolds, dangerous machinery, and avoid exposure to
heat, cold, dust, fumes, and gases. (Tr. 18).

are not of the severity required for any listing under 1.00" (Tr. 17).

The ALJ has a clear duty fully to explain his or her step three analysis. *See Cook v. Heckler, 783 F.2d 1168 (4th Cir. 1986); Schoofield v. Barnhart*, 220 F.Supp. 2d 512 (D. Md. 2002); *France v. Apfel*, 87 F. Supp. 2d 484 (D. Md. 2000); and *Ketcher v. Apfel,* 68 F. Supp. 2d 629 (D. Md. 1999). While the ALJ discussed some of the medical evidence in her summary of the evidence, she did not sufficiently explain her reasoning for her determinations at step three of the sequential analysis. (Tr. 13). For example, nowhere in her decision did the ALJ state what the requirements of the relevant listing(s) were, or even which subsection(s) she considered. (Tr. Id.).

In their respective Memoranda counsel identify Listing 1.04 as applicable. Listing 1.04 *Disorders of the Spine* provides:

1.04 *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

    A.             Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

    or

    B.             Spinal arachnoiditis, confirmed by an operative or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysthesia, resulting in the need for changes in position or posture more than once every two hours;

    or

    C.             Lumbar spinal stenosis resulting in pseudoclaudication established by findings on appropriate medially acceptable imaging, manifested by chronic nonradicular pain and weakness and resulting in inability to ambulate effectively as defined in 1.00B2b.

20 C.F.R. Pt. 404 Subpt. P. App. 1.(As of April 1, 2008).

At the hearing Claimant's counsel argued for consideration under section 1.04. (Tr. 42). In her decision the ALJ only recognized that she "reviewed the requirements of Listing 1.00". (Tr. 17). There are at least 8 subcategories under Listing 1.00

and the ALJ does not state which sections were considered. Claimant argues that she meets criteria of Listing 1.04A and that the ALJ failed properly to analyze the evidence which supports her claims. In his Memorandum, the Commissioner devotes nearly six pages to citing evidence in the record that supports his argument that the ALJ properly found Claimant did not meet or equal any listing including Listing 1.04.  However, this is not the ALJ's analysis, it is the Commissioner's after the fact rationalization of it.  The limited nature of this Court's review is to examine the stated reasoning of the ALJ to see whether it is supported by substantial evidence--not to speculate whether the selection by the Commissioner in his brief of facts that support the result reached by the ALJ from a record which also included facts that did not support that result was what the ALJ relied on.  As acknowledged by the Commissioner in his Memorandum, there is evidence that the Claimant may meet at least some requirements of 1.04A. See Defendant's Memorandum pp. 16-17. (Tr. 7, 40, 117, 187, 188, 206, 242, 301).

The ALJ failed to properly address which Listing subsections were considered in this case. This error warrants a remand in this case since the ALJ stated: "...the record does not show evidence of a gross anatomical deformity bony or fibrous ankylosis, joint space narrowing, or bony destruction." (Tr. 17).  Careful review of the record however reveals that this is not an accurate statement. As the Commissioner acknowledges in his Memorandum, the record shows moderate degenerative changes in Claimant's spine[2]. (185-187). *See* Def. Memorandum, p. 16.  The medical records also show that Claimant suffers from carpal tunnel syndrome as well as neurological sensory loss and parasthesia in her hands[3]. (Tr.265).

While the reasons suggested by the Commissioner may well be valid bases for a finding that Claimant does not meet 1.04A, the

---

[2] On January 15, 2007 an MRI report showed degenerative disc disease with nerve root compression.  (Tr. 185).

[3] Claimant also cites exhibit AC-2 as supportive of her argument. This evidence was not submitted until after the ALJ's decision.  However, this evidence was accepted and made part of the record by the Appeals Council. Because I am remanding this case for further consideration, upon remand, the medical records from Open MRI & Imaging Center of Elkton dated January 26, 2009, will be considered and discussed accordingly. (Tr. 4-10).

reasons now proffered, were not cited, or even discussed, by the ALJ in her decision. (Tr. 19). Failure by an ALJ to explain a decision makes it impossible to tell what facts the ALJ considered, accepted as credible, and rejected as unpersuasive.

In short, the role of the Court is to evaluate the decision of the ALJ and its supporting facts. It is not the function of this Court to engage in speculation. The ALJ should have stated which listings were considered so that this Court could review for substantial evidence. Under these circumstances the ALJ should have cited the specific listing(s) and done a more detailed analysis of the medical evidence that related to them. *See Ketcher v. Apfel*, 68 F.Supp. 2d 629, 646 (D. Md. 1999). The ALJ is in a much better position to evaluate the evidence and more importantly, has the duty, to make clear and identify what evidence she is relying upon. Without such explanation it is simply impossible to tell whether there was substantial evidence to support the determination. *Cook* v. *Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). On remand this must be done.

Ms. Gill also argues that the ALJ erred in determining her RFC and failed to analyze properly the opinions of her treating physician, Dr. Jui-Chih Hsu. *See* Plaintiff's Memorandum, pp. 18-20. The Commissioner argues that the ALJ adequately discussed the basis for her RFC findings and properly rejected Dr. Hsu's opinions. *See* Defendant's Memorandum, pp. 19-23.

20 C.F.R. § 404.1527(d) requires the ALJ to give a treating physician's opinion controlling weight if two conditions are met: (1) it is supported by medically acceptable clinical and laboratory diagnostic techniques and (2) it is not inconsistent with the other substantial evidence in the record. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). When the ALJ determines that a treating physician's opinion is not entitled to controlling weight, the ALJ must determine what weight, if any, to give that opinion and must give "specific reasons" in her opinion for that decision. SSR 96-2Pp (1996 WL 374188, *5). Further, the ALJ must consider various factors in determining what weight should be given including: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence;(4) consistency between the opinion and the record as a whole;(5) whether or not the

physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the Secretary's attention which tend to support or contradict the opinion.  20 C.F.R. §404.1527(d)(2)(i),(d)(2)(ii)(3)-(6); *See also* SSR 96-5p; SSR 96-2p.  After review of the record and the ALJ's decision, it is apparent that the ALJ failed to discuss her evaluation of the standards outlined above.

The ALJ found that Ms. Gill was capable of performing a range of light work. See FN.1, *supra*. The ALJ acknowledged Dr. Hsu's Medical Report Form[1] but rejected it and gave Dr. Hsu's opinions "no special significance."  The ALJ instead afforded greater weight to a state agency physician's PRFCA.[4]  Citing Exhibit F, the ALJ stated: "the undersigned agrees that the combined effects of claimant's impairments would limit her to no more than light work, a finding consistent with the substantial evidence of record." (Tr. 19).  However, this report was submitted 2 months before the results of Claimant's April 2007 MRI, and this agency physician never reviewed Doctor Hsu's opinions[5].

Finally, I am not able to say that the ALJ's rejection of Dr. Hsu's opinions was proper since the ALJ did not discuss whether any of the 6 factors listed above were considered. For example, when he completed the RFC questionnaire in January 2007, Dr. Hsu had been treating Claimant regularly for a period of at least three years. Dr. Hsu also oversaw Ms. Gill's treatment with the neurosurgeon specialist, Dr. Douglas Abbott and the Union Rehab physiotherapy associates. (Tr. 219, 230).

---

[1] Dr. Hsu stated *inter alia* that Claimant could: sit for two hours; stand and walk for one hour; never climb, carry, bend, squat, reach or crawl; and could not use her hands for repetitive actions such as pushing and pulling or manipulation. *See* Exhibit 9-F (Tr. 390-392)

[4] This evidence is not identified in the ALJ's decision with any degree of specificity other than a reference to Exhibit F. Because there is only one state agency PRCFA in the record-- Exhibit 2F dated February 26, 2007-- completed by DDS physician identified as Adil R. Totoonchie, the undersigned assumes this is the exhibit the ALJ was referring to. (Tr. 177-184).

[5] The agency physician stated that there were no treating or examining sources statements regarding claimant's physical capacities in the file. (Tr. 183).

As a consequence of the ALJ's failure to adequately consider Dr. Hsu's opinions I find that the hypotheticals presented to the VE with the limitations she described are not supported by substantial evidence. (Tr. 53-55). *See* SSR 96-8p (1996 WL 374184 *7 (S.S.A).

Accordingly, the decision of the Commissioner will be reversed and the case will be remanded with directions that the ALJ specifically consider all of Ms. Gill's impairments meet or equal listings §1.04 and/or and the relevant subpart(s). On remand the ALJ is to explain her reasons for making these determinations in sufficient detail for the Court to conduct meaningful review of these findings. A separate Order shall issue.

Dated: 1/18/12

_____/s/_____
                Paul W. Grimm
                United States Magistrate Judge